[No. 14563.   Department Two.   May 6, 1918.]

B. L. GATES *et al., as Executors etc., Appellants,* v. WILLIS B. HERR, *as Executor etc., Respondent.*[1]

PLEADING—EXHIBITS—DEMAND. A motion for an order requiring defendants to furnish a copy of a written contract pleaded by them, is a sufficient "demand in writing" as required by Rem. Code, § 284, and is "upon notice," within Id., § 1262.

EXECUTORS AND ADMINISTRATORS—CONTRACTS—CONSIDERATION. An executory agreement by an executor to buy from himself, in his trust capacity, a half interest in certain property and apply the proceeds to the payment of a legatee, who had no interest in the property, is not enforcible as a claim against the executor, where the contract was wholly unperformed through the refusal of the court to order the sale, and the property was subsequently sold by the successor of the executor, who never received any interest in it; since there was no benefit to the promisor and no detriment to the promisee.

SAME. An executor's conditional promise to pay a legacy if the court would by its order legalize a sale by himself as executor to himself, is not enforcible as an executor's promise to pay a legacy from an estate possessed of sufficient assets, where the court did not make the order.

CONTRACTS—CONSIDERATION—SEAL. The presumption of consideration for a contract under seal is rebuttable.

Appeal from a judgment of the superior court for King county, Frater, J., entered July 24, 1917, upon findings in favor of the defendant, dismissing an action on contract, tried to the court. Affirmed.

[1]Reported in 172 Pac. 912.

*T. B. McMartin* and *Griffin & Griffin,* for appellants.
*Herr, Bayley & Croson,* for respondent.

PER CURIAM.—Albert J. Richards died on February
14, 1914, leaving an estate consisting of community and
separate property inventoried at $34,946. By the terms
of his will a bequest of $6,000 was to be paid to his
mother, Philena Richards, out of his separate estate.
William Holt, the partner of Richards in the business
of conducting the Grand Central hotel in Seattle, was
named as executor under the provisions of the will,
which was of the character known as a nonintervention
will, and letters testamentary were issued to him on
February 16, 1914. One month later the executor and
the legatee Philena Richards entered into the follow-
ing agreement:

"Memorandum of Agreement, made and entered in-
to this 16th day of March, 1914, by and between Philena
Richards, party of the first part, and William Holt,
party of the second part, both of Seattle, Washington.

"Witnesseth: Whereas on the 10th day of February,
1914, Albert J. Richards died at Seattle, Washington,
testate, leaving by his will a legacy of six thousand dol-
lars ($6,000) to the party of the first part to be paid
out of his separate estate; and

"Whereas a portion of the separate estate of said
Albert J. Richards, deceased, consists of an undivided
one-half interest in and to what is known as the Grand
Central hotel, located in the Latimer building, on the
corner of First avenue south and Main street, in the
city of Seattle, Washington, said hotel being up to the
time of the death of said Albert J. Richards owned
and conducted jointly by William Holt, party of the
second part, and said Albert J. Richards, deceased,
share and share alike; and

"Whereas, said William Holt as the executor and
surviving partner of said Albert J. Richards, deceased,
desires to wind up the affairs of said partnership and
to convert the interest of said Albert J. Richards, de-

ceased, in said hotel into cash for the purpose of raising funds with which to pay said legacy; and

"Whereas the parties hereto have had the said interest appraised by disinterested appraisers who have agreed that the reasonable value of such interest does not exceed the sum of thirty-five hundred dollars ($3,-500);

"Now therefore, in consideration of the premises, and of one dollar ($1) in cash paid by the party of the second part to the party of the first part, receipt whereof is hereby acknowledged, the party of the first part agrees that the party of the second part may purchase said one-half interest in said hotel, together with the furniture and fixtures therein contained, as surviving partner, at and for the said sum of thirty-five hundred dollars ($3,500) and the said party of the second part agrees to purchase the same in order to wind up the affairs of said partnership at said price on the following terms, to-wit: The sum of one thousand dollars ($1,000) in cash on or before the first day of April, 1914; the sum of five hundred dollars ($500) on or before the first day of July, 1914; the sum of five hundred dollars ($500) on or before the first day of October, 1914; the sum of five hundred dollars ($500) on or before the first day of January, 1915; the sum of five hundred dollars ($500) on or before the first day of March, 1915; the sum of five hundred dollars ($500) on or before the first day of June, 1915.

"Said deferred payments to be evidenced by the promissory notes of the party of the second part with interest thereon at the rate of 6% per annum, payable at maturity, and said deferred payments will be secured by the party of the second part by a chattel mortgage on said Grand Central hotel and the furniture and fixtures thereof and a mortgage upon lots one (1), two (2), three (3), and four (4) of block two (2) Seaside addition to Alki Point as per the recorded plat thereof. And the party of the first part covenants and agrees to accept from said party of the second part said amount of thirty-five hundred dollars ($3,500) so to be paid as aforesaid as a credit upon and in part payment of said legacy of six thousand dollars ($6,-

000), and agrees and consents that an order of court
may be made and entered in this estate permitting and
allowing the sale of said half interest in said hotel to
the party of the second part at said valuation, which it
is agreed is a fair and reasonable one.

"In witness whereof, the said parties have hereunto
set their hands and seals the day and year first above
written.          (Signed) Philena Richards (Seal)
                    "William Holt.     (Seal)
"Witness; A. B. L. Dent.

"The party of the second part agrees to keep all of
the said personal property and the building upon the
lots herein described insured for not less than twenty-
five hundred dollars ($2,500) in a company or com-
panies satisfactory to the party of the first part; loss if
any to be paid to the party of the first part as her in-
terest may appear, to be applied to the payment or
partial payment of the notes in the order they shall
become due in the event of any loss or damage to the
property insured or any portion thereof.

                                        "Wm. Holt."

No payments had been made under this contract by
the executor at the time of his death on November 17,
1915. After the death of the executor, Minnie Rich-
ards, the widow of the testator, was appointed ad-
ministratrix *de bonis non* of her deceased husband's
estate, and thereafter sold her decedent's half interest
in the Grand Central hotel under order of the court.
Philena Richards died on November 30, 1915, and the
appellants B. L. Gates and Alfred R. T. Dent were ap-
pointed executors under her last will. They instituted
this action against Willis B. Herr, as executor of the
estate of William Holt, to enforce payment for their
claim of $3,500, with interest, alleged to be due under
the foregoing agreement, which claim had been rejected
by the executor of Holt's estate. An affirmative de-
fense was interposed, setting up that it was understood
between William Holt and Philena Richards that a

one-half interest in the hotel was the separate property of Albert J. Richards, in which his wife had no right, and that the agreement was entered into with a view to securing the consent of Philena Richards to the sale to Holt and a waiver of her right to appear and object to an order of sale, and was for the purpose of raising funds to apply on her legacy; that there was no consideration for the agreement; that, on application for an order of court authorizing the sale of Richard's half interest, his widow objected to the jurisdiction of the court on the ground that the will was nonintervention in character, and further, that she claimed such interest as community property and had notified Holt not to apply any portion on account of the legacy; that, since the death of Holt, Minnie Richards, as administratrix *de bonis non* of the estate of her deceased husband, has sold and disposed of the one-half interest in the hotel and appropriated the money to her own use; and that, owing to the dispute as to the character of the property, such interest was never purchased by Holt. The complaint alleged and the answer denied that the one-half interest of Richards in the hotel property was his separate estate.

The court found that the undivided half interest in dispute had been sold by the administratrix *de bonis non* under order of the court; that such half interest never was the property of Philena Richards, deceased, nor did she ever have the right to possess or dispose of same; that Holt never received any consideration for the agreement with Philena Richards; that he never received the undivided one-half interest in the hotel; that the estate of William Holt, deceased, has never received any benefit or profit by reason of entering into such stipulation; that Philena Richards or her representatives have never been in a position to transfer or convey to William Holt, or his estate, such un-

divided half interest, and that the provisions of the written stipulation between Philena Richards and William Holt have never been complied with. As a conclusion of law, the court found the respondent was entitled to a judgment dismissing the action. From such judgment, this appeal is prosecuted.

The appellants assign as error an order of the court requiring them to furnish respondent with a copy of a written contract which had been pleaded by them according to its legal effect. They contend that there was no "demand in writing" as required by Rem. Code, § 284, that it was not "upon notice" as required by Id., § 1262, and that the motion therefor was not accompanied by any showing of necessity made upon affidavit. The motion itself was sufficient to satisfy the requirement of notice and written demand. The sufficiency of any showing of necessity was a matter within the discretion of the trial court. We think this assignment is without merit.

The issues presented by the pleadings are, was the half interest of the deceased Richards in the Grand Central hotel property community or separate estate, and, if the latter, did the surviving partner, who was also executor without the intervention of the court, enter into a valid agreement binding upon himself whereby title to such half interest passed from Richards' estate to himself, thus rendering him personally liable to Philena Richards.

The court did not expressly find that Richards' one-half interest in the hotel was either separate or community property, although appellants requested a finding that it was separate property. In view of the conclusion we have reached upon the merits of the case, the failure of the court to find as to the separate character of the property was immaterial.

The claim in behalf of the estate of Philena Richards against the estate of William Holt is founded on the written agreement wherein Holt, as an individual, undertakes to buy from himself, as an executor of Albert J. Richards' estate, the one-half interest of such estate in the Grand Central Hotel property and apply the agreed price upon the legacy to Philena Richards. This half interest had never been distributed to Philena Richards. The will of Albert J. Richards bequeathed to Philena Richards "the sum of six thousand dollars ($6,000) in cash . . . to be paid out of my separate estate." The bequest did not give Philena Richards title to any specific property of the estate. It merely gave her a contingent right to the sum of $6,000, or whatever less sum should develop as pertaining to the decedent's separate property on final distribution of the estate. In making the agreement with Holt, Philena Richards parted with nothing of value. The half interest in the hotel was inventoried as separate property in which she would have some interest under the will, but her agreement to accept from the executor its agreed valuation to be applied on her bequest would not constitute a valuable consideration. Her agreement to consent to an order of court for the contemplated disposition of this property was nothing more than a waiver of any right to object. The only party really bound to do anything under the contract was William Holt, thus constituting it a pseudo-unilateral one. But in a sense he was not bound. The agreement called for the sanction of an order of court, and this was never obtained. The evidence does not show there was any attempt of the parties to proceed with the agreement after the refusal of the court to order the sale. There is no evidence that Holt ever attempted to assert title to his deceased partner's interest, and it

must be presumed that the arrangement between the parties was abandoned.

This action is maintained on the theory that the agreement constituted a valid indebtedness on the part of Holt enforcible as a claim against his estate. The most favorable view possible is that the agreement was an executory contract remaining unperformed. No attempt was ever made to enforce the performance of the agreement against either Holt or the executors of his estate. The record shows merely a claim based upon Holt's contract to buy from himself in his trust capacity as executor and apply the proceeds of the sale upon a bequest owing by his trust estate, if the court would sanction it. We are satisfied that the appellants have no valid claim against the respondent. The record further shows that the hotel half interest which was covered by the agreement upon which appellants found their claim was subsequently sold by Holt's successor in administering Richards' estate, by order of the court under due process. Whether the property thus disposed of was separate property of Richards subject to the bequest in favor of his mother is not a matter for determination here. Nor does there seem to be any question of the rights and liabilities of a surviving partner in the case, inasmuch as the surviving partner, who was also the executor, made no attempt to administer the partnership portion of the estate in any other capacity than that provided by the statutes governing the administration of decedents' estates.

The appellants contend that their right of recovery is supported by the rule which makes an executor personally liable for the debts and legacies of the testator, where the estate possessed assets sufficient and the executor promised payment to the creditor or legatee. If that rule were recognized as going to the

extent of binding the executor personally on a promise to pay a legacy instead of a debt, we have no such promise in· this case. The promise was merely conditional that if the court would, by its order, legalize the sale by himself as executor to himself as an individual, he would pay the purchase price out of his own funds as a *pro tanto* application on the legacy. Although the generally accepted rule is that an executor cannot purchase at his own sale, it may be conceded that the present case might afford an exception to the rule, since the transaction would have been for the best interests of the estate in disposing of a partnership interest at what the evidence shows was an advantageous price, inasmuch as this interest on a subsequent sale realized $2,000 less than this offer. But we are confronted with the fact that the property in no sense belonged to Philena Richards. Her interest in the estate was for a cash legacy contingent on the realization of that sum from the assets constituting the separate estate of the decedent. Her right to such legacy is still intact. Holt's agreement in his dual capacity to buy and pay for the one-half interest in the hotel would not form a contract with Philena Richards. His promise to pay her therefor, if viewed from the standpoint of contractual relations, was void, since it was not hers to dispose of. While the acquisition of the whole interest in the hotel might have been a benefit to him, there was no element of detriment to her. She was entitled to payment of the legacy and it was the executor's duty to discharge the bequest. The only element of consideration affecting her was the benefit in expediting part payment of a legacy due her. One of the rules relating to consideration is stated in 9 Cyc. 316, as follows:

"There is no consideration for a promise where no benefit is conferred upon the promisor nor detriment

suffered by the promisee, and the promisor neither undertakes to do anything which he is not bound to do nor forbears to do anything which he has a right to do. . . . The, detriment to the promisee which suffices as a consideration for a contract must be a detriment on entering into the contract, not from the breach of it.''

It is plain the agreement shows a *nudum pactum* so far as Philena Richards is concerned. Council contend, however, that because the agreement was under seal it imported a consideration. That is only *prima facie* so, and the rule in such cases is that want of consideration may be shown as a matter of defense. *Considine v. Gallagher*, 31 Wash. 669, 72 Pac. 96.

Finding no prejudicial error in the case, the judgment is affirmed.